# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DANGELO MONTARIS JORGENSEN,

       Defendant-Appellant.

UNPUBLISHED
January 18, 2018

No. 334225
Oakland Circuit Court
LC No. 2016-257394-FC

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree home invasion, MCL 750.110A(2). The trial court sentenced defendant to 7 to 30 years' imprisonment. We affirm.

On November 15, 2015, defendant broke into the Oak Park home of Tory Newsome, his half-brother's mother, while she was alone and asleep in the home. Newsome claimed that she had locked her doors and windows except for those windows in her bathroom and kitchen. Newsome awoke at about 4:00 a.m. and saw a bright cell phone light shining on her from inside her bedroom. She jumped up and saw a reflection in the mirror of a short, broad man with a beard. He was wearing a red sweater, black pants, white socks, and flip-flops or sandals. She heard him say "shut up and be quiet and I won't hurt you." At one point, she got a look at him before he again shined the light in her face and told her "not to look at him." Newsome testified that the man then ran into the kitchen and climbed out the window.

Responding officers found a lawn chair propped against Newsome's house under the kitchen window. Newsome gave officers a description of the intruder, describing his clothing and explaining that he was a short man in his late teens with a medium build, a broad chest and stocky shoulders, a peanut or egg-shaped head, a thin or full beard, and a medium or low fade haircut. Newsome's kitchen window was dusted for fingerprints. Using the Automated Fingerprint Identification System (AFIS), a right palm print collected from the kitchen window matched defendant's palm print, and prints lifted from the back of the house also matched defendant's prints.

Defendant was interviewed on December 3, 2015. He acknowledged that he had a prior home invasion. His story about visits to Newsome's house changed throughout the interview. Defendant initially said that he did not know anything about the house or where it was. When he

-1-

was told that the police found his fingerprints at the house, he stated that his brother lived there and that he had been there a week earlier looking for his brother. When he was told that the break-in occurred two-and-a-half weeks earlier, defendant said that he must have been at the house three weeks earlier. Defendant also said that he had once been in the house with his father about two or three months earlier. He explained that he and his father had gone to Newsome's house to pick her up for an NA meeting and that when Newsome did not answer the door, his father climbed through the back window and let defendant in through the front door. Defendant said that he walked through the living room and into the kitchen to get a glass of water, but did not go anywhere else in the house. When he was told that his fingerprints were found in the bedroom (which was not true), defendant said that he had gone into the bedroom to look for Newsome. Defendant denied breaking into Newsome's house.

Defendant's fiancé provided an alibi, claiming that he picked her up from work at 10:00 p.m., that after they got home, they ate dinner and played video games, and that they then went upstairs to their bedroom and closed the door. She testified that defendant did not leave the house that night. Carol Bailey, who also lived there, testified that she did not hear anyone leave the house that night and that when she got up at 7:30 a.m. the next morning, she saw that defendant's bedroom door was closed. Bailey testified that they woke up at about 9:00 a.m. and that defendant was wearing pajama bottoms and a tee-shirt.

On appeal, defendant argues that the trial court abused its discretion by admitting a prior home invasion conviction into evidence.

Before trial, the prosecutor moved to admit evidence of defendant's prior home invasion under MRE 404(b). The prosecutor argued that the evidence was admissible to show defendant's identity, as well as to show a common scheme or plan and to rebut a claim that the incident was fabricated. Defendant objected on grounds that the evidence was more prejudicial than probative, arguing that the charged act and previous act were too dissimilar. The trial court admitted the evidence, stating:

> Okay. I reviewed the last case and I noticed the window came into play, the opening of the window. And the Court thinks that a method of doing things, a scheme is highly relevant. And it weighs the danger of unfair prejudice is [out]weighed by the relevancy here. And the Court will give a limiting instruction.

Later, the trial court noted that it had admitted the evidence because defendant accomplished the prior home invasion by placing a planter box under a window, and in the instant case, there was a lawn chair under a window, which showed (1) a common scheme or plan and (2) defendant's identity. After expressing concern about a propensity-type inference that could be drawn from the scant evidence introduced about the previous conviction, the court left it to the parties to decide how to "handle it." The parties resolved the issue by stipulating to the admission of the following statement as MRE 404(b) evidence:

> Mr. Jorgensen previously admitted to seeing a bag inside of a residence through a window. [He] opened the window and took the bag from inside the residence without ever entering the residence.

After accepting the stipulation, the court gave a limiting instruction to the jury:

> You have heard evidence that was introduced to show that defendant committed a crime for which he is not on trial. If you believe the evidence you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the defendant used a plan, a scheme or characteristic scheme that he has used before or since.
>
> You must not consider this evidence for any other purpose. For example, you must not decide it shows the defendant is a bad person. Or that he is likely to commit crimes.
>
> You must not convict the defendant here because you think he's guilty of other bad conduct.

The admissibility of MRE 404(b) other acts evidence is within the trial court's discretion, and will be reversed on appeal only when there has been a clear abuse of discretion. *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2005). A court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588–589; 739 NW2d 385 (2007). A trial court's decision on a close evidentiary question ordinarily cannot constitute an abuse of discretion. *People v Sabin (After Second Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

When this Court finds error in the admission of evidence, a preserved nonconstitutional mistake is reviewed for harmless error and "is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017), quoting *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014). This inquiry "focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). "In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Id*.

Defendant argues that the trial court abused its discretion by admitting evidence pertaining to his previous home invasion conviction under MRE 404(b), which provides in pertinent part:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In order to present other acts evidence, the prosecutor must meet the standard set forth in *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

Under this standard, the evidence must be offered for a proper purpose under MRE 404(b) and be relevant under MRE 401 and 402. *Id*. In addition, the evidence's probative value must not be substantially outweighed by unfair prejudice under MRE 403. *Id*. A trial court may provide a limiting instruction to the jury if necessary. *Id*.

"Under the first prong of the *VanderVliet* test, the question is whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence." *Denson*, 500 Mich at 398, citing *People v Crawford*, 458 Mich 376, 385-386; 582 NW2d 785 (1998). The prosecution has the burden of establishing that purpose. *Id*. MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998), citing *VanderVliet*, 444 Mich at 63. On the other hand, such other-acts evidence may be admissible whenever it is relevant to a noncharacter purpose, such as one of the purposes specifically enumerated in MRE 404(b)(1). *Starr*, 457 Mich at 496-497.

Here, the trial court concluded that the evidence tended to prove a method of home invasion that was relevant — placing an object under a window to more easily facilitate an intrusion. Although, as further discussed below, an object was placed below a window in the prior act to allow defendant to simply reach into a window to accomplish the crime whereas an object was placed below a window in the instant matter to allow physical entry of defendant's entire body into the home to perpetrate the crime, a generous application of MRE 404(b)(1) may allow evidence of this sort to be admitted. Therefore, the trial court's decision could pass muster under step one of the *VanderVliet* test. *Denson*, 500 Mich 385 at 392. Whether it *actually* does satisfy *VanderVliet* is of no moment, given our conclusion that the second prong of *VanderVliet* has not been satisfied.

"Under the second prong of the *VanderVliet* test, logical relevance is determined by the application of MRE 401 and MRE 402." *Denson*, 500 Mich at 400, citing *Crawford*, 458 Mich at 388. Other acts evidence is logically relevant if both materiality and probative value are present. *Id*. Materiality is the requirement that the other-acts evidence be related to "any fact that is of consequence" to the action. *Id*., quoting MRE 401. Evidence is probative if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *Crawford*, 458 Mich at 389-390. "In the context of prior acts evidence [] MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime." *Id*. In this regard, we look at the similarity between the defendant's other act and the charged crime. If the prosecutor's theory of relevance is based on the similarity between the defendant's other act and the charged crime there must be a "striking similarity" between the two acts to find the other act admissible. *Denson*, 500 Mich at 403-403.

Here, the court found evidence of the prior home invasion material and probative as it showed a common scheme or plan. Defendant's previous conviction involved moving a planter beneath an open window to more easily gain access inside the home, opening the window, reaching into a stranger's home, and taking a laptop computer from a bag. Those details do not parallel the details of defendant's presently charged crime. The only similarity is the use of a lawn object to get closer to a window of the home. In the first case, however, defendant is allegedly to have been with another person and simply reached through an open window to take an easily reachable object. In the instant case, in stark contrast, defendant is alleged to have used

a lawn chair to climb into the home of someone he knew in the middle of the night, confront the homeowner, placing something hard in her side and telling her to be quiet and he would not hurt her, and digitally penetrate her. Defendant then stole a phone and purse (later recovered from her yard) located inside the home (not directly inside the window) and fled when startled by a car in the neighbor's driveway. These crimes are not "strikingly" similar. Accordingly, the second prong of the *VanderVliet* test was not satisfied and the other acts evidence should not have been admitted. We need not consider whether the remaining prongs were met.

Nevertheless, assessing the error in admitting the other acts evidence in light of the properly admitted evidence, it is not more probable than not that a different outcome would have resulted without the error. *Lukity*, 460 Mich at 495. Newsome identified defendant as the perpetrator of the crime in a photo lineup. When questioned by police about his knowledge of Newsome's home, defendant's story changed several times until he admitted previously being in her bedroom when falsely told his fingerprints were found there. Absent the other acts evidence, then, the jury could have easily convicted defendant of the home invasion.

Additionally, *VanderVliet* authorizes "a limiting instruction" upon request. *Starr*, 457 Mich at 498, citing *VanderVliet,* 444 Mich at 75. The trial court gave a limiting instruction regarding defendant's previous home invasion conviction. As jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors, *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003), the limiting instruction can be found to have cured the erroneous admission of the prior bad act.

Affirmed.

/s/ Thomas C. Cameron
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher